UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY BUSO, individually and on behalf of all others similarly situated,<br><br>                              Plaintiff,<br><br>v.<br><br>VIGO IMPORTING CO., a Florida corporation; and DOES 1 through 10, inclusive,<br><br>                              Defendants. | Case No.:  18cv1328-WQH-BGS<br><br>**ORDER** |

HAYES, Judge:

The matter before the Court is the Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b) filed by Defendant Vigo Importing Co.  (ECF No. 12).

## I.    PROCEDURAL BACKGROUND

On June 19, 2018, Plaintiff Anthony Buso (Buso) initiated this action on behalf of himself and others similarly situated by filing the Class Action Complaint against Defendant Vigo Importing Co. (Vigo).  (ECF No. 1).  Buso brings a cause of action for violation of the California Consumer Legal Remedies Act (CLRA).  Cal. Civ. Code §§ 1770(a)(5), (a)(9).  Buso alleges violations of the California Fair Packaging and Labeling Act (CFPLA).  Cal. Bus. & Prof. Code §§ 12606.2(b)–(c).  Buso alleges that Vigo's

product, Alessi Autentico Premium Risotto with Porcini Mushrooms (the Risotto mix), is sold in packaging with over 70 percent empty space, known as slack fill. (ECF No. 1 at 2–3). Buso alleges that the slack fill violates California's consumer protection, labeling, and unfair competition laws. *Id.* at 3, 12. Buso seeks class certification, declaratory relief, injunctive relief, restitution and other equitable relief, compensatory and punitive damages, prejudgment interest, and attorneys' fees and costs. *Id.* at 13.

On July 17, 2018, Vigo filed a Motion to Dimiss pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b). (ECF No. 12). Vigo asserts that the Complaint fails to allege facts showing that a reasonable consumer would be deceived by the packaging of the Risotto mix, or that the packaging of the Risotto mix contains nonfunctional slack fill. On August 6, 2018, Buso filed a response in opposition to the Motion (ECF No. 20), accompanied by a request for judicial notice (ECF Nos. 20-1). Buso asserts that sufficient facts were alleged in the Complaint to show that the packaging and slack fill of the Risotto mix may lead reasonable consumers to believe that the packages contain more product than is actually sold in the package. On August 13, 2018, Vigo filed a reply (ECF No. 21), accompanied by the Declaration of Robert J. Guite (ECF No. 21-1) and supporting exhibits.[1]

## II.    ALLEGATIONS OF THE COMPLAINT

Buso "charges Defendant with unlawfully and unfairly packaging its Alessi Autentico Premium Risotto products in opaque containers that contain more than 70% empty space." ECF No. 1 ¶ 1; *see also* ¶¶ 16–17 ("Defendant's . . . Risotto products are, and at all relevant times were, sold in non-transparent containers. . . . More than 70% of the interior of the . . . containers . . . is comprised of empty space, or nonfunctional slack fill."). Buso alleges he "purchased Defendant's Alessi Autentico Premium Risotto with Porcini Mushrooms product in September 2017 in San Diego, California. . . . for the dual

---

[1] The Court does not consider the declaration or exhibits attached to the Reply.

purpose of enjoying its contents and determining whether the container was lawfully filled." *Id.* ¶ 3. Buso alleges he "was surprised when he opened the product that the container had more than 70% empty space, or slack-fill." *Id.*

The Complaint lists provisions of the CFPLA, including a list of permitted purposes for slack fill. *Id.* ¶¶ 13–14. Buso alleges, "None of the above safe-harbor provisions applies to the Alessi Autentico Premium Risotto products. Defendant intentionally incorporated non-functional slackfill in its packaging of the Alessi Autentico Premium Risotto products. As such, the packaging is per se illegal, and reliance upon the packaging by absent class members is presumed." *Id.* ¶ 15.

Buso includes the following photographs:

 

*Id.* ¶ 17. Buso alleges that "[t]he containers (1) do not allow consumers to fully view its contents; and (2) contain[] nonfunctional slack fill. As such, the packaging is per se illegal." *Id.* ¶ 18. Buso alleges, "Defendant is selling and will continue to sell the Alessi Autentico Premium Risotto products using these illegal slack-filled containers," and that "Defendant's packaging and advertising of the Alessi Autentico Premium Risotto products violate the CFPLA." *Id.* ¶¶ 19–20. Buso alleges that "[t]here is no practical reason for the non-functional slack-fill used to package the Alessi Autentico Premium Risotto products." *Id.* ¶ 23. Buso alleges, "As a result of Defendant's illegal packaging, thousands of

consumers purchased the Products and have been damaged by Defendant's illegal conduct." *Id.* ¶ 24.

Buso brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(b) on behalf of himself, and on behalf of the class defined as "All California residents who made retail purchases of Defendant's Alessi Autentico Premium Risotto products with non-functional slack-fill, as defined by California Business & Professions Code § 12606.2, during the applicable limitations period up to and including final judgment in this action." *Id.* ¶¶ 25, 40.

Buso alleges, "Plaintiff and the Class suffered injuries caused by Defendant because the Alessi Autentico Premium Risotto product did not have the qualities as promised and were unlawfully packaged." *Id.* ¶ 48. Buso alleges "Defendant violated California law because the Alessi Autentico Premium Risotto products are packaged in containers made, formed or filled to contain nonfunctional slack-fill." *Id.* ¶ 44. Buso alleges that Vigo's conduct "violated and continues to violate" the CLRA at Cal. Civ. Code §§ 1770(a)(5), (9). *Id.* ¶¶ 45–46. Buso alleges compliance with the CLRA notice letter requirements at Cal. Civ. Code § 1782(a), and provides a copy of the related letter. *Id.* ¶ 49; Ex. 1 to Compl., ECF 1-2.

## III.   LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." In order to state a claim for relief, a pleading "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal under Rule 12(b)(6) "is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (quotation omitted).

Stating a claim for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). When considering a motion to

dismiss, a court must accept as true all "well-pleaded factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "Determining whether a complaint states plausible claim for relief is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Ebner v. Fresh, Inc.*, 838 F.3d 958, 963 (9th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679).

"In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted). If both parties advance plausible alternative explanations, then the "plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)," because "[t]he standard at this stage of the litigation is not that plaintiff's explanation must be true or even probable. *Starr v. Baca*, 652 F.3d 1202, 1216–17 (9th Cir. 2011) ("Plaintiff's complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is *im* plausible.").

## IV. DISCUSSION

### A. Reasonable Consumer Standard

Vigo contends that no reasonable consumer would be misled by the packaging of the Risotto mix. (ECF No. 12-1 at 11). Vigo asserts that the packaging accurately states the weight of the product and the instructions to prepare the product for consumption. Vigo contends that reasonable consumers do not expect to open the packaging and begin to eat the product immediately. Vigo asserts that the size of the packaging bears little relationship to the quantity of prepared product. Vigo contends that the reasonable consumer is on notice of any empty space in the Risotto product package. Vigo asserts that the bag is flexible, the contents are readily felt, and the fill level is readily perceptible.

Buso contends that the reasonable customer is not required to be particularly wary, vigilant, suspicious, or experienced at inspecting or judging products. (ECF No. 20 at 17–18). Buso contends that the expectations of the reasonable consumer are typically not decided at the motion to dismiss stage. Buso contends that the claim survives if the Risotto

packaging may mislead consumers.  Buso asserts that the size of the packaging creates an inaccurate impression of the quantity of product the consumer is purchasing.  Buso asserts that slack fill cases are actionable under California law.  Buso contends that accurate labeling cannot overcome misleading packaging for purposes of CLRA liability.

The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices."  Cal. Civ. Code § 1770.  The CLRA specifically prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have," and "[a]dvertising goods or services with intent not to sell them as advertised."  Cal. Civ. Code § 1770(a)(5), (9).  Under the California consumer protection statutes, the design, packaging, or labeling of a product is deceptive or misleading if a reasonable consumer would likely be deceived.  *Ebner*, 838 F.3d at 965–67 (citing *Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008)).  The possibility a few consumer might conceivably misunderstand when viewing the product in an unreasonable manner is insufficient.  *Id.* at 965.  The complaint must demonstrate "a probability 'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'"  *Id.* (quoting *Lavie v. Procter & Gamble Co.*, 129 Cal. Rptr.2d 486, 495 (2003)).

"California courts have recognized that whether a business practice is deceptive will usually be a question of fact not appropriate for decision on demurrer."  *Williams*, 552 F.3d at 939; *accord Linear Tech. Corp. v. Applied Materials, Inc.*, 61 Cal. Rptr. 3d 221, 236 (Ct. App. 2007).  Dismissal is appropriate, however, if the complaint does not plausibly allege that a reasonable consumer could be misled or deceived by a product's design, packaging, or labeling.  *Ebner*, 838 F.3d at 965, 967; *see also Forouzesh v. Starbucks Corp.*, No. CV16-3830PA(AGRx), 2016 WL 4443203, at *3 (concluding that "[i]f children have figured out that including ice in a cold beverage decreases the amount of liquid they will receive," a reasonable customer is not "deceived into believing that Defendant's Cold Drinks contain 12 ounces of beverage excluding ice for a 'Tall,'" or the number of ounces corresponding to the other sizes).

In *Williams*, the court declined to dismiss claims alleging that the packaging of Gerber's Fruit Juice Snacks was deceptive. 552 F.3d at 936. In addition to the product name "Fruit Juice Snacks," the packaging featured pictures of fruits, stated the snacks contained "fruit juice and other natural ingredients," and stated the snacks were "specifically designed to help toddlers grow up strong and healthy." *Id.* at 936, 939. The court concluded that an ingredient list accurately identifying the snack's main ingredients as sugar and corn syrup did not overcome the deception created by the packaging, which led consumers to believe the snacks were made from natural ingredients like the pictured fruit. *Id.*; *see also Reid v. Johnson & Johnson*, 780 F.3d 952, 959 (9th Cir. 2015) ("[I]t is far from clear that typical consumers understand that a product containing partially hydrogenated vegetable oil necessarily has trans fat, so even if an ingredient list has a curative effect in some cases . . . . Reid's allegations of misrepresentations are plausible enough to survive a motion to dismiss."); *contra Stiles v. Trader Joe's Co.*, No. CV 16-04318TJH(KSx), 2017 WL 3084267, at *4–5 (C.D. Cal. Apr. 4, 2017) (concluding oatmeal package's "maple" labeling would not lead reasonable consumers to believe the product contained maple syrup and maple sugar, notwithdstanding the illustration of the oatmeal covered in a brown substance; unlike *Williams*, brown substance was not readily identifiable, and the ambiguity would lead the consumer to the accurate ingredients list).

In *Ebner*, the plaintiffs claimed that reasonable consumers were deceived by the omission of label disclosures, and the oversized packaging, of a tube of lip product. 838 F.3d at 965. The Court of Appeals explained that for purposes of the reasonable consumer test, "*Williams* stands for the proposition that if the defendant commits an act of deception, the presence of fine print revealing the truth is insufficient to dispel that deception." *Id.* at 966. The *Ebner* court concluded that reasonable consumers would not need supplemental label disclosures to avoid being deceived "as to the amount of lip product in a tube." *Id.* at 965. The tube label accurately disclosed the correct weight of the product, meaning that "there is no deceptive act to be dispelled." *Id.* at 966. The tube featured a "stop device preventing [some] product from advancing up the tube," but the stop device was a market

standard. *Id.* The product left in the tube was also visible to the consumer; the court concluded that "[a] rational consumer would not simply assume that the tube contains no further product when he or she can plainly see the surface of the [product]." *Id.*

The court applied the same reasoning to the claim that "the tube's screw mechanism, the 5.35 gram metallic bottom, and the oversized tube and cardboard packaging all contribute to the misleading impression of a larger quantity of lip product than is actually included." *Id.* at 967. The court concluded additional weight from the metallic bottom was not misleading, due to the accurate net weight label and the commonality of "elaborate packaging" practices in the market. *Id.* ("[N]o reasonable consumer expects the weight or overall size of the packaging to reflect directly the quantity of product contained therein.").

In this case, as in *Ebner*, "there is no deceptive act to be dispelled." *Id.* at 966. The net weight on the label is accurately stated. Cases assessing claims of consumer deception for nonpliable packaging through which a consumer cannot evaluate the amount of product, and the amount of slack fill, are not persuasive. *See, e.g.*, *Escobar v. Just Born Inc.*, No. CV17-01826BRO(PJWx), 2017 WL 5125740, at *7 (C.D. Cal. June 12, 2017) (candy sold in opaque boxes); *Daniel v. Tootsie Roll Indus., LLC*, No. 17 Civ. 7541(NRB), 2018 WL 3650015, at *11–14 (S.D.N.Y. Aug. 1, 2018) (same); *Bratton v. Hershey Co.*, No. 2:16-CV-4322-C-NKL, 2017 WL 2126864, at *1 (W.D. Mo. May 16, 2017) (same); *Izquierdo v. Mondelez Int'l, Inc.*, No. 16-cv-04697(CM), 2016 WL 6459832, at *7 (S.D.N.Y. Oct. 26, 2016) (same); *Samet v. Procter & Gamble Co.*, No. 5:12-cv-01891PSG, 2013 WL 3124647, at *9 (N.D. Cal. June 18, 2013) (potato chips sold in an air-filled bag); *Hendricks v. Starkist Co.*, 30 F. Supp. 3d 917, 931 (N.D. Cal. 2014) (tuna sold in a can); *In re McCormick & Co., Inc., Pepper Prods. Mktg. & Sales Practice Litig.*, 215 F. Supp. 3d 51, 62 (D.D.C. 2016) (pepper sold in a tin); *Jackie Arcala, et al. v. Golden Grain Co., et al.*,

Case No. CGC–16-555084, slip op. (Cal. Super. Ct. Apr. 5, 2017) (grain-based products sold in boxes).[2]

In this case, the package is pliable. The consumer can see and feel the package and perceive the amount of product in the package before purchasing the Risotto mix. A reasonable consumer consumer feels the amount of product in the package when picking it up off the shelf and could not plausibly be misled by the packaging of the Risotto mix. Buso's allegations are insufficient to state a CLRA claim.[3]

## B. Nonfunctional Slack Fill

Vigo contends that Buso makes no specific factual allegations that the Risotto mix has nonfunctional slack fill. (ECF No. 12-1 at 14). Vigo contends that the Risotto mix falls within several permitted categories for slack fill under Cal. Bus. & Prof. Code § 12606.2(c). Vigo contends the slack fill protects the contents of the packaging during manufacturing, transportation, and distribution as permitted by § 12606.2(c)(1). Vigo contends the slack fill is required for the machinery used to seal the Risotto mix as permitted by § 12606.2(c)(2). Vigo contends the slack fill is due to the product settling during transportation as permitted by § 12606.2(c)(3). Vigo contends the slack fill allows the package to perform the specific function of preventing spills when the customer opens the Risotto mix, as permitted by § 12606.2(c)(4). Vigo contends the manufacturing process requires the slack fill because current equipment cannot accommodate changes to the size of the slack fill or packaging, as permitted by § 12606.2(c)(6). Vigo asserts that the

---

[2] Plaintiff requests the Court take judicial notice of the case *Jackie Arcala, et al. v. Golden Grain Co., et al.*, Case No. CGC–16-555084, slip op. (Cal. Super. Ct. Apr. 5, 2017). The Court grants Plaintiff's request for judicial notice. *See U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (permitting judicial notice of "proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue") (citation and internal quotations omitted).

[3] The Complaint does not satisfy the pleading requirements of Rule 8. The Court does not address whether the Complaint also fails to satisfy the pleading requirements of Rule 9(b).

packaging is soft, and consumers can evaluate the fill level of the product by seeing and touching the packaging.

Buso contends that legal precedent instructs the Court to deny the motion to dismiss, regardless of Vigo's assertion of § 12606.2(c) safe harbors—the list of permissible reasons for slack fill. (ECF No. 20 at 13). Buso contends that the safe harbors do not justify the alleged slack fill level in excess of 70 percent.

At all times relevant to this action, Cal. Bus. & Prof. Code § 12606.2(c) stated,

> A container that does not allow the consumer to fully view its contents shall be considered to be filled as to be misleading if it contains nonfunctional slack fill. Slack fill is the difference between the actual capacity of a container and the volume of product contained therein. Nonfunctional slack fill is the empty space in a package that is filled to substantially less than its capacity for reasons other than any one or more of the following:
>   (1) Protection of the contents of the package.
>   (2) The requirements of the machines used for enclosing the contents in the package.
>   (3) Unavoidable product settling during shipping and handling.
>   (4) The need for the package to perform a specific function, such as where packaging plays a role in the preparation or consumption of a food, if that function is inherent to the nature of the food and is clearly communicated to consumers.
>   (5) The fact that the product consists of a food packaged in a reusable container where the container is part of the presentation of the food and has value that is both significant in proportion to the value of the product and independent of its function to hold the food, such as a gift product consisting of a food or foods combined with a container that is intended for further use after the food is consumed or durable commemorative or promotional packages.
>   (6) Inability to increase the level of fill or to further reduce the size of the package, such as where some minimum package size is necessary to accommodate required food labeling exclusive of any vignettes or other nonmandatory designs or label information, discourage pilfering, facilitate handling, or accommodate tamper-resistant devices.

In this case, the soft packaging of the Risotto mix allows consumers to perceive the amount of product the package contains, even if the package is opaque. The consumer is able to

assess the amount of product before purchasing the Risotto mix.  The Complaint does not adequately allege that the packaging of the Risotto mix is "[a] container that does not allow the consumer to fully view its contents" within the meaning of Cal. Bus. & Prof. Code § 12606.2(c).

Even if the ability to "fully view" a container's contents is interepreted to require a transparent container, the Complaint does not adequately allege that the slack fill is nonfunctional.  The Complaint states that "Defendant intentionally incorporated non-functional slackfill in its packaging of the Alessi Autentico Premium Risotto products," and that "[t]here is no practical reason for the non-functional slack-fill used to package the Alessi Autentico Premium Risotto products."  (ECF No. 1 at 6, 8).  The Complaint refers to the empty space as nonfunctional slack fill multiple times.  *Id.* at 6–8, 10, 12.  The Complaint lists the statutory provisions at Cal. Bus. & Prof. Code § 12606.2(c) and states, "None of the above safe-harbor provisions applies to the Alessi Autentico Premium Risotto products."  *Id.* at 6.  The Complaint does not allege facts to support the conclusion that the slack fill is nonfunctional, or facts to show that the safe harbors do not apply.  The allegations are insufficient to state a claim.  *See Martinez-Leander v. Wellnx Life Scis., Inc.*, No. CV16-08220SJO(EX), 2017 WL 2616918, at *7 (C.D. Cal. Mar. 6, 2017) ("[A]fter reciting the language of the statute and its fifteen exceptions, Plaintiff concludes that the Defendants did not meet any of these exceptions, and 'lacked any lawful justification' for the empty space. These allegations, conclusory and bereft of factual support, are insufficient to state a claim.") (citation omitted); *see also Bush v. Mondelez Int'l, Inc.*, No. 16-cv-02460-RS, 2016 WL 5886886, at *2,  (N.D. Cal. Oct. 7, 2016) ("After reciting the six circumstances in which slack-fill is functional and not misleading, under 21 C.F.R. § 100.100(a)(1)-(6), Bush alleges tersely that 'none of these circumstances apply here.' His allegations are insufficient to support a claim of unlawful packaging.") (citation omitted).

18cv1328-WQH-BGS

Buso fails to adequately allege nonfunctional slack fill in violation of the CFPLA under Cal. Bus. & Prof. Code § 12606.2.  The allegations of nonfunctional slack fill are inadequate to support Buso's CLRA claim.

## V.   CONCLUSION

IT IS HEREBY ORDERED that the motion to dismiss (ECF No. 12) is GRANTED. Any motions to file an amended complaint must be filed within thirty (30) days of the date of this order in accordance with Local Rule 7.1.

Dated:  November 28, 2018

*William Q. Hayes*
Hon. William Q. Hayes
United States District Court

18cv1328-WQH-BGS